# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JAMES WOODBURY,

     Appellant,

     v.

CITY OF SEATTLE; STATE OF
WASHINGTON; and OFFICE OF
ADMINISTRATIVE HEARINGS,

     Respondents.

No. 74329-5-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: May 8, 2017

TRICKEY, A.C.J. — Deputy Chief James Woodbury appeals the dismissal of his retaliation claim against his employer, the Seattle Fire Department (SFD) and the city of Seattle (City). His primary argument is that the administrative law judge (ALJ) who originally dismissed his claim acted arbitrarily and capriciously. Because we conclude that the ALJ's order was thorough and well-reasoned, and none of Woodbury's other challenges have merit, we affirm.

## FACTS

In 2004, SFD promoted Woodbury from battalion chief to deputy chief, assigning him to be the assistant fire marshal. He reported to Assistant Chief John Nelsen, who was the fire marshal. Woodbury became concerned about the behavior of Lieutenant Milton Footer, another SFD employee. Footer was SFD's special events fire prevention inspector at Qwest Field (now known as CenturyLink Field). His duties included working with First & Goal (F&G), the special events management organization for Qwest Field. Footer's responsibilities included overseeing the fire and emergency procedures during home games for the Seattle

Seahawks football team.

Woodbury believed they should have SFD employees rotate in and out of that position because he was concerned that Footer was starting to act like an F&G production assistant instead of an inspector. He voiced his concerns to Nelsen, who brought them to Chief Gregory Dean. Dean told Nelsen not to rotate Footer out of his position. In 2007, Assistant Chief Ken Tipler replaced Nelsen as fire marshal. Woodbury repeated his concerns about Footer's position to Tipler.

In 2008, Captain Chris Greene, Footer's immediate supervisor, discovered that SFD had not sent proper invoices to F&G for SFD's work at Qwest Field during Seahawks games. Invoicing was Footer's responsibility. Greene believed they were missing seven years' worth of revenue, with the losses possibly totaling over $200,000. Greene shared his concerns with Tipler, Diane Hansen, an advisor to Tipler, and Woodbury. Tipler told Hansen that he and Dean had discussed the problem, but Dean had not been receptive.

Hansen was disappointed with Dean's response. Dean told Hansen that he would have SFD officers investigate the issue. Hansen and Woodbury told Tipler they were considering filing a whistleblower complaint over Footer's conduct. Then Tipler told Dean that Woodbury, Greene, and Hansen were considering filing an ethics complaint.

In September 2008, Woodbury drafted his City of Seattle Ethics and Elections Commission (SEEC) complaint and showed it to Greene. Greene chose not to sign the complaint and told Dean that he felt Woodbury was pressuring him

2

to sign it. Woodbury filed a complaint with the SEEC on October 17, 2008.[1]

Meanwhile, in August 2008, the Mayor's office asked SFD to cut an assistant chief position from its 2009 budget. The four assistant chiefs at the time were Nelsen, Tipler, Alan Vickery, and William Hepburn. Dean suggested abrogating a deputy chief position and a lieutenant position instead. Dean and his assistant chiefs decided to eliminate the deputy chief of special operations position because no staff reported directly to that position.

Once they decided which deputy chief position to abrogate, there would be one more deputy chief than deputy chief positions. The assistant chiefs had to decide which deputy chief to demote. Dean and Hepburn initially assumed they would have to reduce the rank of the least senior deputy chief because they believed that they were required to consider time in rank as the primary factor. Later, Dean learned from SFD's human resources department that it was not a requirement.

In November, Dean discussed the upcoming demotions with David Bracilano and Julie McCarty in the labor relations department. Dean asked if he could consider performance as a factor and mentioned some problems he had with Woodbury's performance. They advised Dean that using performance might make the demotion seem like a disciplinary action, which would need to meet certain disciplinary standards. Bracilano and McCarty also conveyed the union's suggestion that he seek a volunteer. Dean asked if any of the deputy chiefs would volunteer to be demoted; none did.

---

[1] The SEEC concluded that Footer had committed misconduct. Ultimately, Footer resigned in lieu of termination.

Dean met with the assistant chiefs three times in November and December of 2008 to discuss which one of the eleven deputy chiefs to demote. The assistant chiefs discussed the pros and cons of demoting each of the deputy chiefs. Dean testified that he did not criticize Woodbury's performance. At his deposition, Nelsen testified that Dean criticized only Woodbury's performance. And Hepburn testified that Dean criticized Woodbury and one of the other deputy chiefs.

Ultimately, at the suggestion of Vickery and Hepburn, the assistant chiefs recommended that Dean demote Woodbury. Three of the four assistant chiefs testified that their reason for selecting Woodbury was that Woodbury was scheduled to rotate into the deputy chief of special operations, the position they had already decided to abrogate.[2] Tipler, the remaining assistant chief, recommended demoting Woodbury because of his poor people skills. The assistant chiefs testified that Dean's presence did not influence their recommendation to demote Woodbury. Dean accepted their recommendation and demoted Woodbury.

There was no discussion during any of the meetings about Footer's conduct or the fact that anyone had filed an SEEC complaint. Several of the assistant chiefs were unaware of the situation with Footer and Woodbury while they were making the demotion decision. Other assistant chiefs said that Dean told them someone had filed an SEEC complaint, but that he had discouraged them from discussing it.[3] All of the assistant chiefs testified that they did not believe Dean

---

[2] In 2007, the assistant chiefs agreed to have deputy chiefs rotate through the various deputy chief positions.

[3] The assistant chief who mentioned learning about the SEEC complaint could not recall when he had learned about the complaint but did not believe it had been at one of the

was attempting to get them to select Woodbury for the demotion. Dean also testified that he was not attempting to influence the assistant chiefs' recommendation.

In January 2009, Woodbury sued SFD and the City, alleging that he had been demoted in retaliation for filing the SEEC complaint. After an administrative hearing, the ALJ entered findings of fact, conclusions of law, and final order dismissing the claim, finding that Woodbury had not proven that SFD had a retaliatory motive for demoting him.

The ALJ found that most of the events leading to the assistant chiefs' decision to reduce Woodbury's rank happened before Woodbury filed his SEEC complaint and, therefore, could not have been motivated by retaliation: Dean and the assistant chiefs decided to rotate deputy chiefs in 2007 and notified Woodbury that he would rotate into the deputy chief of special operations position in July 2008. The assistant chiefs recommended abrogating the deputy chief of special operations position in mid-August 2008.

The ALJ also found that the assistant chiefs did not discuss the SEEC complaint while deliberating and that Dean's comments about Woodbury had no impact on the assistant chiefs' decisions. The ALJ found that the assistant chiefs had no retaliatory intent toward Woodbury, and that their two reasons for selecting Woodbury were that he was "due to rotate into the Special Operations unit that was to be abrogated; and, while an otherwise fine SFD officer, [Woodbury] was perceived as having challenging interactions with his SFD colleagues and the

meetings to discuss the reduction in rank. No one recalled discussing Footer or the SEEC complaint at any of the meetings about which deputy chief to select.

5

public."[4]

Woodbury petitioned for judicial review of the ALJ's order. The superior court affirmed. Woodbury appeals.

## ANALYSIS

Woodbury brought his retaliation claim under state and local whistleblower laws. RCW 42.41.040; former SMC 4.20.860(C) (1994). To prevail on his retaliation claim, Woodbury had to prove that he engaged in a statutorily protected activity, that SFD discharged him or took some other adverse employment action against him, and that retaliation was a substantial factor behind the adverse action. Kahn v. Salerno, 90 Wn. App. 110, 128-29, 951 P.2d 321 (1998).

Both parties agree that Woodbury engaged in protected activity and suffered an adverse employment action. Woodbury filed a complaint with the SEEC about misconduct by other SFD employees, an activity protected by RCW 42.41.040(1). SFD reduced his rank from deputy chief to battalion chief. The primary question presented to the ALJ was whether retaliation was a substantial factor in SFD's decision to reduce Woodbury's rank.

A substantial factor needs to be a "significant motivating factor" but does not need to be the sole factor. Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014). This court reviews an ALJ's interpretations of law de novo. Seattle City Light v. Swanson, 193 Wn. App. 795, 810, 373 P.3d 342 (2016).

Woodbury contends that the superior court erred in upholding the ALJ's order because the ALJ misapplied the law, exercised his judgment arbitrarily and

---

[4] Clerk's Papers (CP) at 43 (Finding of Fact (FF) 4.74).

capriciously, and made findings of fact that were not supported by substantial evidence. We conclude that the ALJ's order is well-reasoned and supported by substantial evidence.

## Misapplication of the Law

Here, Woodbury claims that the ALJ required Woodbury to prove that retaliation was a "but for" cause of his demotion.[5] The ALJ's summary of the law required that Woodbury prove that retaliation was a "substantial factor."[6] This is an accurate statement of the applicable law. Woodbury points out that the City, in its posthearing brief, described Woodbury's burden as needing to show "'that the City's explanation is pretextual and the real reason [to reduce Woodbury's rank was] a desire to retaliate.'"[7] The ALJ did not adopt that standard. We find no error.

## Arbitrary and Capricious

Woodbury argues that the ALJ exercised his discretion arbitrarily and capriciously because the order did not address Woodbury's circumstantial evidence that Dean had a retaliatory motive for demoting him. The City responds that the order properly focused on the assistant chiefs' motives and addressed all material facts. The focus of the hearing was whether retaliation was a substantial factor in the assistant chiefs' decision to recommend Woodbury for the reduction in rank, either because of their own retaliatory motives or because Dean attempted to influence their recommendation. Accordingly, we find that the order properly addressed all material questions of fact.

---

[5] Br. of Appellant at 7.
[6] CP at 53 (Conclusion of Law (CL) 5.10).
[7] Br. of Appellant at 31 (quoting Administrative Record (AR) at 526).

7

The Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, governs judicial review of agency actions. Swanson, 193 Wn. App. at 810. The WAPA requires that the ALJ make detailed findings of fact to support his legal conclusions:

> Initial and final orders shall include a statement of findings and conclusions, and the reasons and basis therefor, on all the material issues of fact, law, or discretion presented on the record, including the remedy or sanction and, if applicable, the action taken on a petition for a stay of effectiveness. Any findings based substantially on credibility of evidence or demeanor of witnesses shall be so identified.

RCW 34.05.461(3). "[T]he absence of a finding of fact in favor of the party with the burden of proof as to a disputed issue is the equivalent of a finding against the party on that issue." Yakima Police Patrolmen's Ass'n v. City of Yakima, 153 Wn. App. 541, 562, 222 P.3d 1217 (2009).

The analysis in an ALJ's order need not be extensive. US W. Commc'ns, Inc. v. Wash. Utils. & Transp. Comm'n, 86 Wn. App. 719, 731, 937 P.2d 1326 (1997). "Adequacy, not eloquence, is the test." US W. Commc'ns, 86 Wn. App. at 731. The superior court may overturn an agency decision only if the "decision is based on an error of law, the order is not supported by substantial evidence, or the order is arbitrary and capricious." Campbell v. State Emp't Sec. Dep't, 180 Wn.2d 566, 571, 326 P.3d 713 (2014). The Court of Appeals sits in the same position as the superior court. Swanson, 193 Wn. App. at 810.

Woodbury contends that the ALJ's findings are insufficient because they do not address several key matters: Dean's knowledge that Woodbury had filed an SEEC complaint; that Dean discussed possibly demoting Woodbury with members

of the labor relations department before asking for his assistant chiefs' recommendations; the short time between Woodbury's SEEC complaint and SFD's decision to demote him; and the "mendacious testimony" by Dean and other SFD employees.[8] We address each of Woodbury's concerns in turn.

### Dean's Knowledge

First, Woodbury argues that the order is arbitrary because it contains no findings on whether Dean knew that Woodbury had filed an SEEC complaint when the assistant chiefs recommended Woodbury for a reduction in rank. The City argues that Dean's knowledge is not material because the assistant chiefs who made the recommendation did not know about Woodbury's complaint at the time. Dean's knowledge did not impact their process.

A decision-maker cannot retaliate against an employee for engaging in protected behavior unless the decision-maker knows about the employee's behavior. Accordingly, whether the decision-maker knows about the protected activity is generally material.

The real issue presented here is who the decision-makers were. On appeal, Woodbury argues that Dean was the decision-maker. But, at the hearing, Woodbury argued that Dean interfered with the assistant chiefs' decision-making process. Woodbury argued in his posthearing briefing to the ALJ that, when Dean "had to decide which of his managers should be demoted due to budget cuts, [he] guided his subordinates to choose Chief Woodbury in retaliation for his whistleblowing efforts."[9]

---

[8] Br. of Appellant at 36.
[9] AR at 447-48 (Claimant's Post-Hearing Br.).

9

Most of Woodbury's arguments to the ALJ show that the parties considered the assistant chiefs to be the decision-makers. Woodbury alleged that the assistant chiefs "were under Chief Dean's thumb and would do whatever he suggested—an indirect order would suffice";[10] that Dean gave his assistant chiefs indirect orders to select Woodbury; that the "assistant chiefs were more susceptible to [Dean's] influence" because he could choose to have one of their positions abrogated instead of a deputy chief position;[11] and that it would be improper for Dean to comment negatively on Woodbury's performance at the demotion meetings.

But on appeal, Woodbury argues that Dean had "sole discretion" over who to demote.[12] While Woodbury presented evidence that Dean attempted to influence the assistant chiefs' deliberations, he never presented evidence that Dean would do anything other than accept their recommendation. The evidence below established that the assistant chiefs believed Dean had delegated the decision to them. Tipler testified that as he "understood Chief Dean's directions, [Dean] outlined the process and turned it over to the assistant chiefs."[13]

The order shows that the ALJ viewed the assistant chiefs as the decision-makers. The ALJ found that "[t]he [a]ssistant [c]hiefs were unanimous in their testimony that they were not controlled, or even influenced, by anything Chief Dean said or did at the deliberation meetings; they were fully independent in their deliberations. After their evaluation, the [a]ssistant [c]hiefs made their

---

[10] AR at 490.
[11] AR at 490.
[12] Br. of Appellant at 36; Reply Br. of Appellant at 8.
[13] AR at 4662.

10

recommendation for reduction in rank of [Woodbury]. Chief Dean accepted their recommendation."[14] Given the arguments presented by the parties at the hearing below, the ALJ did not err by viewing the assistant chiefs as the decision-makers.

The order shows that the ALJ carefully considered any impact that Dean's remarks about Woodbury may have had on the assistant chiefs' decision. The ALJ found that the assistant chiefs did not perceive Dean's negative comments about Woodbury "to have been express or implied instructions as to whom the [a]ssistant [c]hiefs should select for reduction in rank, nor did the remarks have any influence on any of the [a]ssistant [c]hiefs in their decision to recommend" Woodbury for demotion.[15]

Evidence that Dean knew about Woodbury's SEEC complaint would be relevant to Dean's motive for attempting to influence the assistant chiefs. But, given that the ALJ found that Dean's comments did not influence the assistant chiefs, we conclude that it was not error to omit a finding on whether Dean knew about the SEEC complaint.

### Conversation with Labor Relations

Woodbury argues that the order needed to include findings about Dean's conversation with representatives from the labor relations department regarding Woodbury's performance because it was a material fact. We disagree because the conversation did not impact the assistant chiefs' deliberations.

The order does not mention that Dean asked the labor relations department whether he could consider Woodbury's performance. It is undisputed that Dean

---

[14] CP at 43 (FF 4.75).
[15] CP at 35-36 (FF 4.52).

11

spoke to labor relations, and that he said negative things about Woodbury's performance at that time. But it is also undisputed that Dean did not tell any of the assistant chiefs that he had spoken to labor relations, or mention that they should not consider performance.

For the same reasons discussed above, the material issues of fact at the hearing were those that could influence the assistant chiefs' decision. The assistant chiefs did not know about Dean's conversation with labor relations, so it could not have affected their deliberations. Therefore, the conversation was not material. It was not error to omit any findings regarding that conversation.

*Timing*

Woodbury argues that the order should have included findings that SFD's decision to demote Woodbury was close in time to when Woodbury filed the SEEC complaint. "Proximity in time" between the protected activity and the adverse employment action can be considered as circumstantial evidence of a retaliatory motive. Kahn, 90 Wn. App. at 130-31. Here, the ALJ did not ignore timing. The order noted that the reduction in rank came "[s]hortly after" Woodbury filed his SEEC complaint.[16] The order shows that the ALJ adequately considered timing.

*Mendacity*

Woodbury argues that the order improperly disregarded the "mendacious testimony" offered by SFD witnesses at the hearing.[17] A party's dishonesty may be evidence of its guilt. Hill v. BCTI Income Fund-I, 144 Wn.2d 172, 184, 23 P.3d 440 (2001). "[C]redibility determinations are solely for the trier of fact." Morse v.

---

[16] CP at 52 (CL 5.6).
[17] Br. of Appellant at 36.

12

Antonellis, 149 Wn.2d 572, 574, 70 P.3d 125 (2003). This court cannot review credibility determinations on appeal. Morse, 149 Wn.2d at 574.

Here, the ALJ did not disregard Woodbury's arguments on this issue; he rejected them. The order noted that Woodbury argued that many of SFD's witnesses, especially Dean, were lying.[18] "After careful consideration of the testimony of each witness," the ALJ found that the witnesses were generally credible, but "given to ordinary lapses of memory, misunderstandings, misrecollections and misspeaking."[19] We will not disturb these findings.

### Woodbury's Interpretation of the Evidence

Woodbury's brief includes a seven-page summary of the evidence he believes establishes that SFD retaliated against him, and focused mostly on Dean's actions. Woodbury's analysis offers one way the ALJ could have weighed the evidence; the ALJ clearly interpreted it a different way. "'Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached.'" Heinmiller v. Dep't of Health, 127 Wn.2d 595, 609, 903 P.2d 433, 909 P.2d 1294 (1996) (quoting Pierce County Sheriff v. Civil Serv. Comm'n, 98 Wn.2d 690, 695, 658 P.2d 648 (1983)). Woodbury's summary does not provide a reason to overturn the order.

In short, the ALJ did not exercise his discretion arbitrarily or capriciously.[20]

---

[18] CP at 17-18 (FF 4.2).
[19] CP at 17-18 (FF 4.2-4.3).
[20] Moreover, the ALJ expressly stated that he had "considered all express and implied contentions and arguments made by the parties," and that any arguments he failed to mention in the order "were determined to have no merit, to not substantially affect the rights of the parties, or to not otherwise require comment." CP at 56 (CL 5.11).

13

## Substantial Evidence – Findings of Fact 4.52 and 4.75

Woodbury argues that substantial evidence does not support the finding that Dean discussed the pros and cons of each deputy chief. We disagree.

Substantial evidence is that which is sufficient to persuade a fair-minded person of the truth of the declared premise. Sprint Spectrum, LP v. State, Dep't of Revenue, 174 Wn. App. 645, 653, 302 P.3d 1280 (2013). This court reviews the evidence "in the light most favorable to the party who prevailed in the highest administrative forum to exercise fact-finding authority." Sprint, 174 Wn. App. at 654.

Here, the order included the finding of fact that Dean commented on the pros and cons of each deputy chief. The strongest support for this finding comes from Hepburn's testimony. In Hepburn's deposition, which Woodbury's counsel read to him during the hearing, Hepburn said that Dean "gave pros and cons about all eleven deputy chiefs," but clarified that Dean had only given "cons" about Woodbury and one other deputy chief.[21] During the hearing, Hepburn was asked whether Dean had criticized each of the deputy chiefs.[22] He did not remember Dean criticizing most of them.[23] In response to the question, "And do you recall anything that Chief Dean said?," to which Hepburn responded, "Specifically, not too much conversation, but we discussed pros and cons of each individual."[24] But Woodbury's counsel immediately clarified, "My question specifically is whether you recall anything that Chief Dean said?" Hepburn responded, "I believe there was a

---

[21] AR at 4732.
[22] AR at 4729-30.
[23] AR at 4729-30.
[24] AR at 4707.

14

couple comments about Chief Woodbury that he said."[25]

Although the record does not support that Dean listed "cons" for each of the deputy chiefs, a fair inference from Hepburn's testimony (both at the hearing and in his deposition) was that Dean participated very lightly in the assistant chiefs' discussion of the deputy chiefs' pros and cons. This is sufficient evidence to support the finding that Dean discussed the pros and cons of each deputy chief.

<u>Attorney Fees on Appeal</u>

Woodbury requests attorney fees under RCW 42.41.040(7). The statute allows the prevailing party reasonable attorney fees. Woodbury is not the prevailing party. He is not entitled to attorney fees.

We affirm the order of the superior court, which affirmed the order of the ALJ.

Trickey, A.C.J.

WE CONCUR:

Leach, J.

Appelwick

FILED
2017 MAY -8 AM 8:42
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

---

[25] AR at 4708.